9 A.3d 613

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Lucillious WILLIAMS, Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 20, 2009.

Decided Nov. 17, 2010.

600

Norris E. Gelman, Philadelphia, for Appellant.

Louis Gary Stesis, George Michael Green, John F.X. Reilly, Delaware County District Attorney's Office, Media, for Appellant.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice ORIE MELVIN.

We granted allowance of appeal to clarify whether a criminal defendant has the right to be present while deliberating jurors listen to audio-recorded trial testimony and whether jurors are permitted to review such testimony within the confines of the jury deliberation room. These issues arose on collateral review when Appellant, Lucillious Williams, argued that his trial counsel was ineffective for failing to object when the trial court allowed the jury to listen to an audio recording of a rape victim's testimony in the jury room without Appellant or his attorney present. The Superior Court found that this procedure violated Pa.R.Crim.P. 602(A) but concluded that the error was harmless.[1] In addition, the Superior Court held that an audiotaped recording of a witness's trial testimony does not constitute a transcript for purposes of Pa. R.Crim.P. 646(B)(1), and, thus, counsel could not be deemed ineffective for permitting the jury to listen to the testimony in the deliberation room.[2] Upon review, we affirm the order of the Superior Court.

1. Pa.R.Crim.P. 602(A) provides:
 The defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. The defendant's absence without cause shall not preclude proceeding with the trial including the return of the verdict and the imposition of sentence.

2. Pa.R.Crim.P. 646(B)(1) states that during deliberations, jurors are not permitted to have "a transcript of any trial testimony."

On October 15, 2002, a jury convicted Appellant of one count of rape, five counts of corruption of minors, eleven counts of involuntary deviate sexual intercourse, and fourteen counts of indecent assault based on testimony that he repeatedly molested six children while serving as their babysitter. Appellant was sentenced to twenty-two to forty-four years of imprisonment on February 24, 2003. The Superior Court affirmed the judgment of sentence, and we denied review. *Commonwealth v. Williams*, 860 A.2d 1137 (Pa.Super.2004) (unpublished memorandum), *appeal denied*, 582 Pa. 717, 872 A.2d 1199 (2005).

On May 1, 2006, Appellant filed a counseled petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546, alleging that trial counsel was ineffective for failing to object to the procedure utilized by the trial court when the jury asked to hear an audiotaped recording of one victim's trial testimony during deliberations. Appellant argued, *inter alia*, that allowing the jury to reexamine the testimony in the privacy of the deliberation room violated Pa.R.Crim.P. 602(A) and 646(B)(1) and undermined the integrity of the decision-making process. The PCRA court dismissed the petition without an evidentiary hearing, and a three-judge panel of the Superior Court affirmed the PCRA court's order in a published opinion. *Commonwealth v. Williams*, 959 A.2d 1272 (Pa.Super.2008).

The Superior Court found that the trial court violated Pa.R.Crim.P. 602(A) by permitting the jury to listen to the audiotape outside of Appellant's presence because the rule states that "[t]he defendant shall be present at every stage of the trial." The error was deemed harmless, however, because the jury heard a verbatim recording of the witness's testimony on direct and cross-examination, and neither Appellant nor his counsel would have been able to "alter, modify, or improve the content" if they had been present when the audiotape was played for the jury. *Id.* at 1282. Moreover, the Superior Court reasoned that Appellant did not suffer prejudice because he was acquitted of multiple crimes, which supported an

inference that the jury "carefully considered and weighed all of the evidence for each specific charge." *Id.* at 1283.

The panel also found that playing the audiotape inside the jury room did not violate the dictates of Pa.R.Crim.P. 646(B)(1), which prohibits jurors from possessing transcripts of trial testimony during deliberations. Citing *Commonwealth v. Canales*, 454 Pa. 422, 311 A.2d 572, 575 (1973), where this Court explained that transcripts are forbidden in the jury room because "the physical embodiment of a portion of the trial testimony in written form" might convince jurors to accept the testimony as true, the Superior Court concluded that Rule 646 does not apply to audiotaped recordings. Accordingly, the panel determined that Appellant's second ineffective-assistance-of-counsel claim lacked arguable merit.

Former Justice James Fitzgerald dissented on the basis that the procedure employed herein violated our pronouncement in *Commonwealth v. Peterman*, 430 Pa. 627, 244 A.2d 723, 726 (1968), that when a jury requests a reading of trial testimony, "the review of testimony must be conducted in open court in the presence of [the] parties and their counsel." Although he conceded that Rule 646 does not expressly prohibit jurors from reevaluating audiotaped testimony during their deliberations, the former Justice maintained that jurors cannot review any type of recorded testimony in private because there is always a risk that they will give it excessive weight. Thus, according to the dissent, the defendant "does have a right to be present, and to have counsel present, during a recitation of testimony to the jury, whether in written or audio form." *Williams*, 959 A.2d at 1288.

■ Appellant filed a petition for allowance of appeal, and we granted review to determine whether the Superior Court correctly disposed of his ineffectiveness claims. "In order to be eligible for PCRA relief, Appellant must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found at 42 Pa.C.S. § 9543(a)(2)." *Commonwealth v. Steele*, 599 Pa.

341, 961 A.2d 786, 796 (2008).[3] Ordinarily, appellate review of an order denying post-conviction relief focuses on the PCRA court's factual findings and conclusions of law, which are examined for record support and legal error. *Commonwealth v. Weiss*, 604 Pa. 573, 986 A.2d 808 (2009). Our scope of review is limited to the PCRA court's findings and the evidence of record, viewed in the light most favorable to the prevailing party. *Commonwealth v. Sam*, 597 Pa. 523, 952 A.2d 565 (2008). Here, however, as our inquiry centers upon the Superior Court's interpretation of procedural rules, a purely legal question, our standard of review is *de novo*, and our scope of review is plenary. *Commonwealth v. Patton*, 604 Pa. 307, 985 A.2d 1283 (2009).

 In order to prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must demonstrate that: (1) the underlying issue has arguable merit; (2) the course of conduct pursued by counsel did not have some reasonable basis designed to effectuate the petitioner's interests; and (3) the petitioner suffered actual prejudice as a result of counsel's deficient performance. *Commonwealth v. Williams*, 602 Pa. 360, 980 A.2d 510, 520 (2009). Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. Miller*, 987 A.2d 638, 648 (Pa. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Failure to satisfy any prong of this test necessitates rejection of the petitioner's claim. *Williams*, 980 A.2d at 520.

 Appellant initially contends that trial counsel should have objected when the judge announced that the jury could review the audiotaped testimony in private because Pa. R.Crim.P. 602 gives a criminal defendant an unqualified right to be present at every stage of the trial. Although he

3. Here, Appellant asserts that he is eligible for post-conviction relief pursuant to 42 Pa.C.S. § 9543(a)(2)(ii), which states: "Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

concedes that he had no right to enter the jury room, Appellant argues that the procedure employed by the trial court violated Rule 602 because the review constituted a stage of the trial, and, therefore, the court should have afforded Appellant an opportunity to witness the event by ordering that the tape be played in open court. Consistent with this view, Appellant suggests that counsel had no reasonable basis for failing to object and maintains that the unsupervised examination of the recorded testimony was inherently prejudicial because the jury had control of both the tape and an unknown audio technician whose "body language and facial expressions could well have conveyed his opinion to the jury." Appellant's brief at 22.

We begin our analysis with the text of Pa.R.A.P. 602, which provides that the defendant "shall be present at every stage of the trial" and prohibits the judge from trying or sentencing the defendant in absentia unless the defendant is absent without cause. The Pennsylvania Rules of Criminal Procedure are to be construed in accordance with the rules of statutory construction, where the goal is to ascertain and effectuate the intent of the drafters. See Pa.R.Crim.P. 101(C); 1 Pa.C.S. § 1921(a). In the case at bar, the parties and the trial court all agree that the playback of the audiotaped testimony constituted a stage of the trial, and, as a result, Rule 602 was violated. We concur with this assessment. The rule plainly states that the defendant has the right to observe every phase of the trial, including the impaneling of the jury and the reading of the verdict, and that right unquestionably applies when a deliberating jury is permitted to re-examine a witness's trial testimony. Accordingly, we find that Appellant's first issue has arguable merit.

Nevertheless, assuming arguendo that counsel did not have a reasonable basis for failing to object, Appellant cannot prevail on his ineffectiveness claim because he cannot show actual prejudice; indeed, he admits there is no evidence that the technician who played the tape for the jury influenced the verdict. Appellant, however, maintains that we may presume prejudice in this scenario because the technician's mere pres-

ence in the jury room violated the principle that jury delibera-
tions are to be conducted in total secrecy. According to
Appellant, the temporary presence of an outsider in the jury
room, even for the limited purpose of playing an audiotape, is
sufficient grounds for a new trial. In a similar vein, he asserts
that the procedure employed herein was presumptively preju-
dicial because it violated our pronouncement in *Common-
wealth v. Peterman, supra,* that trial testimony must be
reviewed in open court with the parties and their counsel
present in order to ensure that the testimony is presented to
the jury in a fair and impartial manner.

■ At the outset, we note that Appellant's argument blurs
the distinction between the test for ineffectiveness derived
from *Strickland v. Washington, supra,* and the standard
articulated in *United States v. Cronic,* 466 U.S. 648, 104 S.Ct.
2039, 80 L.Ed.2d 657 (1984). Under *Strickland,* a defendant
must demonstrate actual prejudice by showing that his attor-
ney's performance "fell below an objective standard of reason-
ableness" and that counsel's missteps affected the outcome of
the proceeding.[4] *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052.
We formally approved that test in *Commonwealth v. Pierce,*
515 Pa. 153, 527 A.2d 973, 976–77 (1987), holding that it was
consistent with Pennsylvania law governing ineffective-assis-
tance-of-counsel claims. *See Commonwealth v. Small,* 602 Pa.
425, 980 A.2d 549, 559 n. 3 (2009).

■ In *Cronic,* which was decided the same day as
*Strickland,* the United States Supreme Court held that in
limited circumstances, such as where there has been a com-
plete denial of counsel at a critical stage of the trial, no
specific showing of prejudice is necessary because errors of
that magnitude "are so likely to prejudice the accused that the
cost of litigating their effect in a particular case is unjustified."
*Cronic,* 466 U.S. at 658, 104 S.Ct. 2039. This principle is
grounded in the Sixth Amendment to the United States Con-

---

4. The "arguable merit" and "reasonable basis" prongs of the tripartite
test outlined *supra* are derived from the "performance" component of
the *Strickland* analysis. *See Commonwealth v. Reed,* 601 Pa. 257, 971
A.2d 1216, 1221 n. 4 (2009).

stitution, which requires defense counsel to function as an advocate for the accused and subject the prosecution's case to "meaningful adversarial testing," thereby promoting the search for truth that ensures a fair trial. *Id.* at 656, 104 S.Ct. 2039. For example, if a defendant has a bona fide defense to a criminal charge and proceeds to trial, counsel must dispute the accusations, cross-examine adverse witnesses, and hold the prosecution to its burden of proof in order to comply with the Sixth Amendment. As most attorneys fulfill those duties, few cases fall within the purview of *Cronic,* wherein the Supreme Court noted that a presumption of prejudice arises when there has been a wholesale denial of counsel, counsel was prevented from cross-examining witnesses, counsel completely failed to challenge the prosecution's case, or counsel was faced with circumstances where a fully competent attorney would have been unable to provide effective assistance.[5]

■ Appellant refers to *Strickland* throughout his brief, yet he insinuates that prejudice should be presumed in this case because there is no record of what occurred while the jury was reviewing the audiotaped testimony.[6] *See* Appellant's brief at 22 ("[N]o one knows what happened in the jury deliberation room because the parties and the judge were not there. Arguments cannot be made that establish or disprove actual prejudice, because facts are unavailable."). This argument is misguided because trial counsel's actions clearly do not fall within the ambit of *Cronic,* which applies only when there has been a total failure to subject the prosecution's case to meaningful adversarial testing. *See Florida v. Nixon,* 543 U.S. 175, 189, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) (the presumption of

5. In *Commonwealth v. Reaves,* 592 Pa. 134, 923 A.2d 1119, 1128 (2007), this Court observed, "The presumed prejudice exception to *Strickland* [that was delineated in *Cronic* ] has been found to apply where there was an actual or constructive denial of counsel, the state interfered with counsel's assistance, or counsel had an actual conflict of interest." Furthermore, in Pennsylvania, courts will presume prejudice if an attorney's negligent conduct prevented appellate review of all claims that the client wished to raise on appeal. *Id.*

6. Appellant makes a passing reference to *Cronic* in arguing that the private examination of the recorded testimony was inherently prejudicial. *See* Appellant's brief at 22–23.

prejudice described in *Cronic* is "reserved for situations in which counsel has entirely failed to function as the client's advocate"); *see also Commonwealth v. Steele,* 599 Pa. 341, 961 A.2d 786, 812 (2008). The record establishes that counsel vigorously disputed the allegations of sexual abuse and argued that the victims fabricated the charges, citing prior inconsistent statements, conflicting testimony, and a lack of physical evidence to support their claims. *See* N.T. Trial, 10/11/02, at 11–20. As counsel's failure to lodge a Rule 602 objection did not render the adversarial process presumptively unreliable, *Cronic* has no bearing on this case, and Appellant must demonstrate actual prejudice consistent with *Strickland* and *Pierce.*[7]

■ Having determined that the *Strickland/Pierce* framework applies, it is apparent that Appellant cannot establish a right to relief. Absent evidence that the technician influenced the verdict through body language, inappropriate comments, or other misconduct, Appellant cannot meet his burden of proof under *Strickland.* We are also not persuaded that a new trial is warranted under *Commonwealth v. Peterman, supra.* The defendant in *Peterman* was on trial for criminal homicide when the jury, which had been deliberating for several hours, asked the judge to have the trial testimony of a prosecution witness read to them. The judge granted the request and had the witness's entire testimony read to the

7. Although it purported to apply the *Strickland/Pierce* test, the Superior Court conducted a harmless error analysis, which was improper given the procedural posture of this case. *See Commonwealth v. Williams,* 959 A.2d 1272, 1283 (Pa.Super.2008). The harmless error standard typically applies to claims of trial court error raised on direct appeal, and the burden of proof is on the Commonwealth, which must demonstrate beyond a reasonable doubt that the error did not affect the verdict. *See Commonwealth v. Howard,* 538 Pa. 86, 645 A.2d 1300, 1307 (1994). In contrast, an ineffectiveness claim shifts the focus to counsel's stewardship, and under *Strickland,* the defendant has the burden of showing that counsel's performance "had an actual adverse effect on the outcome of the proceedings." *Howard,* 645 A.2d at 1307. Thus, it is more difficult to obtain relief on collateral review because *Strickland* places a heavier burden on the defendant. *See Commonwealth v. Reaves,* 592 Pa. 134, 923 A.2d 1119, 1130 (2007) (discussing the evidentiary standards applicable to preserved issues of trial court error and derivative claims of ineffective assistance of counsel).

jury in open court with the defendant and his counsel present. However, at the conclusion of the review, the judge spontaneously summarized the testimony of another prosecution witness from handwritten notes created by the judge during the course of the trial. The jury subsequently convicted the defendant of voluntary manslaughter, and he appealed, arguing that the trial court's unsolicited remarks about the second witness were inappropriate and prejudicial because the court placed undue emphasis on selected portions of the witness's testimony.

This Court heard the appeal and determined that a new trial was warranted because the judge's synopsis highlighted inconsistencies in the witness's testimony that undermined the defendant's claim of self-defense and bolstered the prosecution's theory of an intentional killing. In reaching that conclusion, we re-affirmed the principle that trial judges have discretion to allow juries to reexamine trial testimony, stating as follows:

> A trial court's duty is to insure that the jury is fully and adequately instructed as to the law applicable to the facts of the case and, when a trial court refuses a jury request for additional instructions, such refusal is reversible error. But where a jury, in order to refresh [its] recollection, requests a reading of a portion of the testimony actually given at the trial, it is a matter within the discretion of the trial court whether to grant such request. If the trial court does grant the request, the review of testimony must be conducted in open court in the presence of parties and their counsel and, if the resultant review does not place undue emphasis on one witness'[s] testimony, no reversible error is committed. *See: Commonwealth v. Bolger,* [42 Pa.Super. 115 (1910)]. However, if the trial court, at the request of the jury, sends out to the jury the testimony of any certain witness such would constitute reversible error. *See: Commonwealth v. Ware,* 137 Pa. 465, 20 A. 806 (1890). The proper procedure is for a jury to address its request to the trial judge and, if, in the exercise of the court's discretion, a review of testimo-

ny is allowed, such review must be conducted before the court, the parties and counsel.

. . . .

The purpose of any requested review of testimony, obviously, is to dispel any confusion or uncertainty present in the minds of the jurors as to the actual testimony they heard during the course of the trial. . . . In the matter of reviewing testimony, it is the jury's request which is the basis upon which a reading back of the reporter's notes or a transcription of them may be justified. To go beyond the limits of such request is to enter an area where the personal feelings of the trial judge may be subtly interjected into the proceedings by emphasizing only that testimony which is either favorable or unfavorable to one of the parties. Such, in our view, was the inadvertent result in the present case.

*Peterman, supra* at 726–27 (citations and footnote omitted).[8]

As demonstrated by the preceding analysis, the question in *Peterman* was whether a trial court's unilateral decision to summarize a witness's testimony constituted reversible error, which is materially different from the issue at hand. While the *Peterman* Court did remark that testimony should be reviewed in open court, it did not award a new trial on that basis because the testimony that was re-examined in that case was read aloud in open court. Thus, *Peterman* is distinguishable and does not compel a finding that the procedure herein was presumptively prejudicial.

In the instant case, the jury heard an audiotaped recording of one witness's complete trial testimony; no new evidence was submitted, and there was no opportunity for judicial discretion because the judge remained outside the jury room. Appellant's claim that the jury had "full control" over the technician and the tape is belied by the record, which indicates that the technician was instructed to maintain control of the tape at all times. The jury had already seen the witness

8. The *Peterman* case was argued before this Court two months prior to the adoption of Pa.R.Crim.P. 1117, which was subsequently renumbered as Rule 602 on March 1, 2000. Hence, the *Peterman* Court did not employ a rule-based analysis.

testify in a public forum where it was free to observe the body language of every spectator, and the technician was necessary to ensure that the jury did not attempt to review additional testimony without proper authorization. There is no indication that the technician's presence had any effect on the jury, as Appellant has not identified any witnesses or evidence establishing that the technician participated in the jury's deliberations or disclosed confidential information, which would warrant an evidentiary hearing. Accordingly, Appellant's first ineffectiveness claim fails because he has not demonstrated a reasonable probability that the outcome of the trial would have been different if the jury had not reviewed the tape in the deliberation room.

 The second issue presented for review concerns the application of Pa.R.Crim.P. 646 to the facts of this case. The rule provides as follows:

**Rule 646. Material Permitted in Possession of the Jury**

(A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (B).

(B) During deliberations, the jury shall not be permitted to have:

(1) a transcript of any trial testimony;

(2) a copy of any written or otherwise recorded confession by the defendant;

(3) a copy of the information;

(4). written jury instructions.

(C) The jurors shall be permitted to have their notes for use during deliberations.

After deliberating for several hours on a Friday afternoon, the jury began communicating with the trial court and ultimately asked to review an audiotaped recording of one victim's testimony in the courtroom "with nobody present." N.T. Trial, 10/11/02, at 122. In response, the trial court instructed a technician to play the master recording "in the jury deliberation room so that [jurors could] deliberate while listening to

the tape privately." *Id.* Appellant's counsel objected solely on the basis that the jury might feel pressured to return a verdict that same day. The objection was overruled, and the tape was played for the jury, which rendered its verdict the following Tuesday.

Appellant contends that permitting the jury to review audio-recorded trial testimony in the deliberation room violated the spirit of Pa.R.Crim.P. 646(B)(1) because an audio recording is the "functional equivalent" of a trial transcript. Appellant's brief at 28. Citing *Peterman,* he argues that trial counsel should have requested that the audiotape be played in open court to ensure that no one placed undue emphasis on any portion of the testimony. Appellant suggests that counsel had no reasonable basis for failing to object on Rule 646 grounds and asserts that counsel's inaction was prejudicial because he allowed deliberations to take place in the presence of a non-juror, thereby exposing jurors to an external influence that may have affected their determination of guilt.

Appellant also submits that permitting the jury to deliber-ate with a non-exhibit that contained a verbatim recording of a witness's trial testimony was *per se* prejudicial because the jury may have placed undue emphasis on certain aspects of the testimony. In leveling this argument, Appellant cites cases where this Court has observed that trial transcripts and written jury instructions cannot be entrusted to deliberating jurors because they tend to magnify the significance of those items and ignore other matters that warrant consideration. *See Commonwealth v. Oleynik,* 524 Pa. 41, 568 A.2d 1238, 1241 (1990) ("[T]he submission of written instructions would tend to encourage the jury to ignore the court's general instruction and focus upon the written instructions supplied to them."); *Commonwealth v. Karaffa,* 551 Pa. 173, 709 A.2d 887 (1998) (same); *Commonwealth v. Peterman, supra* (if the jury re-quests a reading of any trial testimony to refresh its recollec-tion, the review must be conducted in open court in the presence of the parties and their counsel); *Commonwealth v. Small,* 559 Pa. 423, 741 A.2d 666 (1999) (if the jury requests a

reading of trial testimony, the judge must ensure that the review does not place undue emphasis on particular excerpts).

The Commonwealth counters that Rule 646 does not preclude jurors from listening to audio-recorded testimony during deliberations because the term "transcript" refers to a written document. The Commonwealth also disputes that an audio recording should be treated the same as a written transcript because this Court has stated that Rule 646 was designed to prevent jurors from giving unnecessary weight to "trial testimony in written form." *Canales*, 311 A.2d at 575. Consistent with this view, the Commonwealth maintains that the trial court acted appropriately and dismisses the notion that jurors may have placed undue emphasis on the audiotaped testimony, observing that the jury deliberated for several additional hours and acquitted Appellant of multiple crimes.

In essence, Appellant argues that it is illogical to draw a distinction between written and non-written recordings, while the Commonwealth asserts that the plain language of Rule 646 and pertinent case law support the opposite conclusion. The rules of statutory construction provide that when language is "clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). The rules also state that words must be construed "according to their common and approved usage" unless they have "acquired a peculiar and appropriate meaning." 1 Pa.C.S. § 1903(a); *see also Commonwealth v. Jarowecki*, 604 Pa. 242, 985 A.2d 955, 959 (2009). Conversely, if a rule of criminal procedure is unclear, "courts must consider various indicators of intent such as the object and necessity of the rule and the mischief to be remedied." *Sloan*, 907 A.2d at 465 (citing 1 Pa.C.S. § 1921(c)).

Upon review, we agree with the Commonwealth's interpretation of Rule 646(B)(1). In its common usage and in legal parlance, the word "transcript" denotes a "written, typewritten, or printed copy, especially of a legal record or a student's school record." The American Heritage Dictionary of the English Language 1362 (New college ed.1976). *See also* Black's Law Dictionary 1503 (7th ed.1999) ("A handwritten,

printed, or typed copy of testimony given orally; esp., the official record of proceedings in a trial or hearing, as taken down by a court reporter."). This interpretation is consistent with our opinion in *Commonwealth v. Canales, supra,* where we characterized a written reproduction of a witness's testimony as a transcript and clarified that Pa.R.Crim.P. 1114, the precursor to Rule 646, prohibited jurors from possessing written copies of trial testimony because a tangible document "may have the effect of increasing the probability that the jury will accept that testimony as credible." *Id.* at 575. Hence, the Superior Court correctly found that audio-recorded testimony is not prohibited under Rule 646. Accordingly, we affirm its determination that Appellant's ineffective-assistance-of-counsel argument premised upon trial counsel's failure to lodge a Rule 646 objection lacks arguable merit.

Even if Appellant's underlying claim had arguable merit, he would not be entitled to relief because he cannot demonstrate actual prejudice, *i.e.,* that there is a reasonable probability that counsel's actions affected the outcome of the proceeding. His argument that the mere presence of the technician corrupted the verdict is clearly deficient, as is his contention that playing audio-recorded trial testimony in the jury room was *per se* prejudicial. As to the latter claim, we observe that *Oleynik, Karaffa, Peterman,* and *Small* all deal exclusively with written documents, which are materially different from audiotapes. The use of transcripts during deliberations creates potential problems because they can influence the verdict in several ways. For example, if transcripts are provided to assist jurors in reviewing an audiotaped conversation, there is an inherent danger that the jurors will rely solely on the documents if the conversation is difficult to comprehend, thus abandoning their role as fact-finder and construing the transcripts as independent evidence of the recorded statements. *See United States v. Holton,* 116 F.3d 1536, 1540 (D.C.Cir.1997). There is also a possibility that deliberating jurors will read the transcripts without simultaneously reviewing the audiotape to verify the accuracy of the transcripts. *Id.* at 1541. Finally, some jurists contend that

providing transcripts of recorded conversations that contain inculpatory statements made by the defendant is tantamount to allowing jurors to examine a recorded confession during their deliberations. *See Commonwealth v. Bango,* 560 Pa. 84, 742 A.2d 1070, 1075 n. 2 (1999) (Nigro, J., dissenting).

None of these considerations was an issue at Appellant's trial because the jury never reviewed any transcripts. Furthermore, the audiotaped testimony should have been relatively easy to understand because it was recorded in a controlled environment where the witness and counsel were encouraged to speak loudly and clearly without interrupting each other. *Cf. United States v. Howard,* 80 F.3d 1194 (7th Cir.1996) (transcripts were deemed necessary to review audio-recorded conversations that featured multiple individuals who often spoke simultaneously). Hence, the problems that typically arise with transcripts and audio recordings did not occur here.

In the case at bar, the jury had been deliberating for several hours when it asked to hear an audiotaped recording of one victim's complete trial testimony. The trial court, in its discretion, granted the request and attempted to insulate the jury from external influences by conducting the review in the privacy of the deliberation room. As an additional precaution, the court instructed the technician who operated the tape machine to retain possession of the tape and refrain from playing any additional testimony for the jury. Appellant's concerns about the reliability of the verdict are purely speculative, as there is no indication that the technician ignored the trial court's directives, discussed the case with any members of the jury, or engaged in any other type of inappropriate behavior inside the deliberation room. Thus, Appellant cannot establish actual prejudice stemming from trial counsel's failure to raise a Rule 646 objection, and no relief is due.

Order affirmed.

Chief Justice CASTILLE, Justices EAKIN, BAER, TODD and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, concurring.

I join the majority opinion, except for the final section in which it analyzes whether the trial court's decision to allow the jury to listen to the audiotape during deliberations was prejudicial. *See* Majority Opinion, *op.* at 603, 9 A.3d at 623–24. While I have no doubt that it would be extremely difficult for Appellant to carry his burden of demonstrating actual prejudice under the circumstances (and, indeed, the majority had already found that no prejudice was proved in the context of the Rule 602 claim, *see id.* at 621), my concern lies with the possibility that the Court may be understood as suggesting that permitting a jury to listen to taped testimony during its deliberations is less inherently problematic than allowing it to review trial transcripts. In my view, it would be best to resist making any pronouncements that could be so construed at this juncture, both because it is a question that may implicate complexities and varied scenarios not reflected in the present case,[1] and because doing so is not strictly necessary in any event, given the Court's holding that Rule 646 was not violated and, hence, that Appellant's underlying claim lacks arguable merit. *See id.* at 604, 9 A.3d at 623. *See generally Common-*

1. *See, e.g., State v. Morgensen,* 148 Wash.App. 81, 197 P.3d 715, 718 (2008) ("While there is no absolute prohibition on playing an audiotape of trial testimony during jury deliberations, the right to a fair and impartial jury ... requires that the trial court balance the need to provide the jury with relevant portions of testimony to answer a specific inquiry against the danger of allowing a witness to testify a second time."); *Shaffer v. State,* 449 N.E.2d 1074, 1075 (Ind.1983) (reversing a conviction where the deliberating jury heard lengthy audiotapes of trial testimony, as the state's procedural rules did not "authorize a virtually complete replay of the trial"); *cf. State v. Koontz,* 145 Wash.2d 650, 41 P.3d 475, 478 (2002) ("Reviewing videotaped testimony [during deliberations] raises greater concerns than reading from a transcript because videotaped testimony allows the jury to hear and see more than the factual elements contained in a transcript."); *State v. Halsey,* 232 Neb. 658, 441 N.W.2d 877, 881–82 (1989) (affirming a trial court's decision not to allow a deliberating jury to listen to an audiotape of trial testimony because of the danger that undue emphasis would be placed upon that part of the evidence if reheard). *But cf. Commonwealth v. Peterman,* 430 Pa. 627, 632, 244 A.2d 723, 727 (1968) (indicating that the purpose of any requested review of testimony during deliberations is "to dispel any confusion or uncertainty present in the minds of the jurors as to the actual testimony they heard during the course of the trial").

*wealth v. Johnson,* 538 Pa. 148, 153, 646 A.2d 1170, 1173 (1994) (declining to reach the issues of reasonableness or prejudice where the defendant failed to establish that his underlying claim was of arguable merit); *Commonwealth v. Collins,* 598 Pa. 397, 410, 957 A.2d 237, 245 (2008) (reciting that a failure to satisfy any of the three ineffectiveness prongs requires rejection of the claim of ineffective assistance of trial counsel).